RIDGLEY *v.* RIDGLEY.

DEPOSITS IN COURT—HUSBAND AND WIFE.

> Where invalid husband and his brother, without wife's knowledge, withdrew money deposited in bank in joint names of husband and wife, brother, after husband's death, was properly required, at suit of wife, to pay money into court.

Appeal from Allegan; Miles (Fred T.), J. Submitted October 23, 1931. (Docket No. 58, Calendar No. 35,849.) Decided December 8, 1931.

Bill by Rosa Ridgley against George and Walter Ridgley for an accounting. Decree for plaintiff. Defendant Walter Ridgley appeals. Decree entered.

*W. J. Barnard,* for appellant.

*Leo W. Hoffman* and *Clare E. Hoffman,* for appellee.

SHARPE, J. On October 9, 1930, the plaintiff and her husband, George Ridgley, had on deposit in a savings account in the Old Merchants National Bank & Trust Company of Battle Creek the sum of $3,500, with accrued interest of $70.35. On the first page of the pass book there was written in ink, "In account with Geo. or Rosa Ridgley," and stamped thereon the words, "Joint owners of the entirety payable to either or the survivor." At the same time they had on deposit in a savings account in the Central National Bank in that city a similar sum of money and accrued interest. On the first page of this pass book was written in ink, "In account with Rosa Ridgley or Geo. Ridgley."

George and Rosa were residents of Allegan county. He had been in ill health for some time. On October 8, 1930, the plaintiff and her husband went to the home of his brother Walter in that county, and George remained there for the night. The next day Walter drove George to Battle Creek, and the moneys above referred to were withdrawn by him from the banks. This fact was not communicated to plaintiff. George continued ill, and was taken to a hospital. Plaintiff, on learning of the withdrawal of the moneys from the banks, filed the bill of complaint herein on November 6, 1930, alleging that George and Walter had acted wrongfully and fraudulently in making such withdrawal, that they refused to disclose where the money then was, and that her husband was then ill and "about to die," and that she was "without remedy in the premises, except in a court of equity." She prayed for a decree enjoining them from disposing of the moneys, for a disclosure of where the money then was, and that they be required to pay the same into court to await such order as might "be agreeable to equity and good conscience."

George passed away on November 17, 1930, and the cause was dismissed as to him. It appears, however, that the plaintiff was appointed administratrix of his estate. After the proofs were submitted, the trial court filed an opinion, in which he found that George was "mentally incompetent to do any business" when the money was withdrawn; that the money was "placed in Walter's possession" when withdrawn from the banks, and that he should pay it forthwith to the clerk of the court "for the use and benefit of the plaintiff." A decree was entered accordingly, from which Walter has taken an appeal.

The paying teller of the Central National Bank testified that both George and Walter were present when the money was withdrawn; that Walter asked him for payment in bills of large denominations; that he paid it—"$2,000 in $100 bills, paying him $1,500 out of my own cash in fifties, also giving him three twenties and a ten and some change;" that he passed the money to George, who did not check it, but "slid it across" to Walter, who checked it and had it in his possession when he left the window.

Walter, called as a witness in his own behalf, testified that George got up about 4 o'clock on the morning of October 9th, and awakened him; that they left for Battle Creek about 7 o'clock; that he went with George to the banks and saw the money paid and counted it and gave it back to George; that on the way home they stopped at Kalamazoo; that George there got out of the car and was gone about 40 minutes; that he did not know where he went; that they then drove to Allegan, where they separated and stopped for some time, and then drove on to Walter's home, and that he later took George to his home. He denied that he had ever had the money in his possession after he gave it to George in the bank, and testified that he did not thereafter at any time know where the money was.

Rose Stroud, a nurse in the hospital, testified that, on an occasion when Walter came there to see George, Walter asked him "if Rose knew that he had the money, and George Ridgley says: 'Yes, but I told her I did not give the money to you.' He says, 'That's perfectly all right.' "

Elisha Ampey, a neighbor of Walter, testified:

"I asked Walter about the money. I said, 'Whose money was it?' He said, 'Every dime of it was George's.' We talked on about it and I said if it

was all George's, Rose would hold one-third any way. 'Yes,' he says, 'we are willing to give her and Willie that and I will take the rest.' No, Willie Ridgley is his brother; he got a son named Willie and a brother named Willie. He said the day of the trial that everybody would know where this money was—We would all know the day of the trial where this money was."

There was other competent testimony tending to show that Walter had the money in his possession, or under his control, and the order of the trial court that he should forthwith pay it to the clerk of the court is affirmed.

Counsel devote much space in their briefs in discussing the question as to whom this money shall belong when paid into court. Is the plaintiff entitled to all of it, and, if not, to what part? That issue was not raised by the pleadings. We have heretofore alluded to the allegations in the bill and the prayer for relief. The answer was simply a denial of the material allegations therein. George is now dead, and the plaintiff has been appointed administratrix of his estate.

When the money has been paid into the hands of the clerk of the court, the plaintiff may, under her prayer for other and further relief, petition that it be paid to her. Either individually or as administratrix, she is entitled to it. On this record there need be no determination as to the capacity in which she receives it. That question may be determined in the probate court, to which she must account as administratrix, and in which the personal representatives and creditors, if there be any, of the deceased may be heard. To protect the estate, a suitable bond should be required at the time of payment, unless that filed by her as administratrix shall be deemed sufficient.

A decree may be here entered in conformity to the views we have expressed, with costs to the plaintiff. As the question of the mental incompetency of the deceased is unnecessary to a decision, there will be no reference to it in the decree. It may, of course, be raised in the probate court and there contested by the parties in interest.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.